**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 11-4853**

_____

UNITED STATES OF AMERICA,

> Plaintiff - Appellee,

> v.

ANTONIO ACOSTA-FLORES,

> Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  John A. Gibney, Jr., District Judge.  (3:11-cr-00177-JAG-1)

_____

Argued:  May 15, 2012                 Decided:  June 22, 2012

_____

Before TRAXLER, Chief Judge, and KING and WYNN, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Amy Leigh Austin, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant.  Stephen David Schiller, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Patrick L. Bryant, Appellate Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Antonio Acosta-Flores appeals his conviction for illegally re-entering the country after being removed. <u>See</u> 8 U.S.C.A. § 1326(a) (West 2005). Finding no error, we affirm.

## I.

Acosta-Flores is a Mexican national who first entered the United States as a juvenile at an unknown time and place. He has been removed from the United States more than once, and thus we will summarize the relevant facts with respect to each order of removal.

### December 18, 1996 <u>In Absentia</u> Removal Order

Acosta-Flores was arrested in Michigan by immigration officials in October 1995, charged with having entered the United States without inspection, and placed in removal proceedings. The order to show cause was printed in Spanish and English, and Acosta-Flores signed the notice. The order required Acosta-Flores to appear at a hearing before an immigration judge ("IJ") at a time to be determined, and it indicated that notice of the date would be mailed to the address given by Acosta-Flores. Acosta-Flores was conditionally released from custody to his older brother Ernesto, a permanent legal resident. The release explicitly ordered Acosta-Flores to appear for a hearing "when required." J.A. 112. Ernesto read

2

the release to his brother, and both Acosta-Flores and Ernesto signed it.

On July 8, 1996, the immigration court sent Acosta-Flores a certified letter (to the address he provided at his release) informing him that the removal hearing had been set for December 18, 1996.  The post office attempted delivery twice, and left notices, but the certified letter was returned to the immigration court marked "[u]nclaimed."  J.A. 123.  Acosta-Flores did not appear for his hearing, and the IJ issued an order of removal in absentia.  The order of removal went unenforced until the United States Immigration and Naturalization Service could find him.

### February 4, 2002 Enforcement of 1996 In Absentia Order

Immigration officials located Acosta-Flores five years later in Michigan and, on February 4, 2002, served him with a warrant of removal directing that the outstanding 1996 in absentia removal order be executed.  Acosta-Flores was transported to Texas and removed to Mexico.

### February 13, 2002 Expedited Order of Removal

One week later, Acosta-Flores attempted to sneak across the border in the trunk of a car, but he was discovered by border agents.  Because Acosta-Flores was attempting to enter the United States without valid entry documents, he was summarily removed on February 13, 2002, pursuant to 8 U.S.C.A.

3

§ 1225(b)(1) (West 2005). Under that statute, border agents are empowered to unilaterally remove an "arriving" alien at the border if the alien has false documentation or none at all.

## Subsequent Removals

On December 21, 2002, Acosta-Flores was discovered in Michigan and served with a notice of intent to reinstate a prior order, namely the February 4, 2002, order of removal under which the 1996 in absentia removal order was carried out. On January 7, 2003, Acosta-Flores was returned to Mexico.

On March 10, 2005, Acosta-Flores was caught in New Mexico and was served with a notice of intent to reinstate a prior order, namely the 1996 in absentia removal order. On March 10, 2005, Acosta-Flores was removed to Mexico.

## Criminal Charges and Motion to Dismiss the Indictment

In June 2011, Acosta-Flores was found in Virginia and indicted for illegal re-entry after being removed in violation of 8 U.S.C.A. § 1326(a). Acosta-Flores moved to dismiss the indictment, claiming that the 1996 in absentia order of removal was fundamentally unfair and invalid because he never received notice of the hearing. He further argued that none of the subsequent orders of removal were valid because they all reinstated or relied upon the 1996 in absentia order. The district court rejected this argument, concluding that (1) Acosta-Flores failed to satisfy the statutory requirements to

4

attack the validity of the underlying removal orders; and (2) the February 13, 2002, order was not based on the 1996 _in absentia_ order in any event, and it was a sufficient predicate to sustain the § 1326 conviction. Acosta-Flores subsequently entered a conditional guilty plea, preserving only his right to appeal the denial of his motion to dismiss. The district court imposed a time-served sentence.

## II.

On appeal, Acosta-Flores reiterates the arguments he presented to the district court in support of his motion to dismiss. We conclude, however, that the district court properly denied his motion.

With one exception that does not apply here, 8 U.S.C.A. § 1326(a) makes it a crime for an alien who has been removed to re-enter the United States without the consent of the Attorney General. Therefore, a valid order of removal is a condition precedent to the establishment of guilt under § 1326, and a defendant may collaterally attack the removal order underlying the offense. See United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987).

As we have explained, the district court concluded that, Acosta-Flores's argument notwithstanding, the February 13, 2002, expedited removal order served as a valid basis for the

conviction because it was not based on the 1996 in absentia order. Acosta-Flores continues to assert that the February 13, 2002, order was in fact based on the 1996 in absentia order, but he is incorrect.

The record clearly shows that the February 13, 2002, Expedited Order of Removal was based on Acosta-Flores's lack of documentation at the border rather than on any prior removal order. The expedited order includes boxes for the border agent to check indicating the basis for the expedited removal. The box checked is the one next to Immigration and Nationality Act section 212(a)(7)(A)(i)(I), which corresponds with 8 U.S.C.A. § 1182(a)(7)(A)(i)(I) (West 2005) and which provides that any arriving alien not in possession of valid entry documents is inadmissible. See also 8 U.S.C.A. § 1225(b)(1) (providing for summary removal of alien arriving in United States if alien is inadmissible). Nowhere does the expedited order even suggest that the February 13, 2002, removal was based on the in absentia order.

Acosta-Flores bases his contrary argument on two points. First, he claims that "when he was apprehended at the border in 2002, the immigration authorities determined that he was inadmissible 'based upon a final order by an immigration judge in exclusion, deportation, or removal proceedings.' J.A. 127." Appellant's brief at 16. However, the language on page 127 of

6

the joint appendix that Acosta-Flores quotes is actually from the warrant of removal issued for Acosta-Flores on February 4, 2002, when he was discovered in Michigan, and thus has no bearing on the basis of the February 13, 2002 removal order. As a second basis for his argument that the February 13, 2002 order was based on the in absentia order, Acosta-Flores cites the fact that when he was removed on February 13, 2002, he "was given a form incorrectly advising him that he was inadmissible for a period of twenty years 'as a consequence of [his] having been found inadmissible and of [his] having been previously excluded, deported, or removed from the United States.' J.A. 130." Appellant's brief at 16 (alterations in original). However, as the district court correctly concluded, the fact that Acosta-Flores was given a notice indicating that his prior removal would affect the legal consequences of his February 13, 2002 removal does not indicate that the February 13, 2002 removal was based on the 1996 order rather than on the fact that he was caught attempting to surreptitiously enter the country without the proper papers. The district court was therefore correct to deny the motion to dismiss.

III.

In sum, we affirm Acosta-Flores's conviction.

AFFIRMED

7